# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JAMES M. HERNDON,                )
                                 )
                   Plaintiff,    )        Case No.: 2:19-cv-00018-GMN-NJK
          vs.                    )
                                 )              **ORDER**
CITY OF HENDERSON, *et al.*,      )
                                 )
                   Defendants.   )
_____  )

Pending before the Court is the Motion for Summary Judgment, (ECF No. 54), filed by Defendant City of Henderson.  Plaintiff James Herndon ("Plaintiff") filed a Response, (ECF No. 71), to which Defendant City of Henderson filed a Reply, (ECF No. 75).

Also pending before the Court is the Motion for Summary Judgment, (ECF No. 55), filed by Defendants M. Gillis, L. Good, A. Nelson, D. Nerbonne, D. Russo, and E. Vega (collectively, "Defendant Officers").  Plaintiff filed a Response, (ECF No. 70), to which Defendant Officers filed a Reply, (ECF No. 76).

Also pending before the Court is Plaintiff's Objection/Appeal, (ECF No. 73), of the Magistrate Judge's Order Denying the Motion to Compel, (ECF No. 72).  Defendant City of Henderson and Defendant Officers (collectively, "Defendants") filed a Response, (ECF No. 74).

Also pending before the Court is Plaintiff's Motion for Leave to File Supplement regarding the Objection/Appeal, (ECF No. 90).  Defendants filed a Response, (ECF No. 91), to which Plaintiff filed a Reply, (ECF No. 92).

Also pending before the Court is Plaintiff's Motions for Leave to File Supplement,[1] (ECF Nos. 80–81).  Defendant Officers filed a Response, (ECF No. 85), to which Plaintiff filed a Reply, (ECF No. 88).

For the reasons discussed below, the Court **GRANTS** Defendant City of Henderson's Motion for Summary Judgment, **GRANTS** Defendant Officers' Motion for Summary Judgment, **DENIES as moot** Plaintiff's Objection/Appeal of the Magistrate Judge's Order, and **DENIES** Plaintiff's Motions for Leave to File Supplements.

I.   **BACKGROUND**

This case arises out of Defendants' alleged constitutional violations during a suspected robbery at Sportsman's Warehouse (the "Store") located at 701 Marks Street, Henderson, Nevada. (*See generally* First Amended Compl. ("FAC"), ECF No. 13).  Plaintiff was employed as an assistant manager at the Store. (*Id*. ¶ 12).

On January 14, 2018, Jeremy Hagood, the Store's loss prevention manager, notified Plaintiff that the loss prevention department was surveilling three patrons at the store for suspected stealing. (*Id*. ¶ 13).  Hagood believed that one of the individuals had attempted to steal merchandise from the Store the previous day. (*Id*.).  While surveilling the patrons, Hagood witnessed two of the individuals exit the store to wait in the parking lot while one of the individuals (the "Suspect") remained in the store. (*Id*. ¶ 15).  The Suspect stole various items from the store, including a belt, boxes of ammunition, a handgun, and a wallet. (*Id*.).  After witnessing a handgun fall out of the Suspect's pants, Hagood called 911 to report a theft in progress involving a firearm. (*Id*. ¶ 16).  Using the outdoor CCTV, Hagood told the 911

---

[1] The motions are docketed as a Motion to Amend/Correct Plaintiff's Responses to Defendant City of Henderson and Defendant Officers' Motions for Summary Judgment. (*See* Mots. Leave, ECF Nos. 80–81).  To the extent the Motion for Leave requests to modify the Motion for Summary Judgment briefing, the Court finds a supplement unnecessary as the Court looks to the sufficiency of the current allegations and evidence to resolve the Motion for Summary Judgment.  The allegations would be unaffected by further briefing.  The Court accordingly denies Plaintiff's Motions for Leave, (ECF Nos. 80–81).

operator the pickup truck's license plate and advised that the other two individuals in the parking lot had not committed any theft. (*Id*.).  While Hagood monitored the store, another store employee opened the back door for Defendants Gillis, Good, Russo, Nelson, Nerbonne, and Vegas. (*Id*.).

The officers decided to detain the Suspect, who was in the center of the store. (*Id*. ¶ 19). Defendants Nerbonne and Good planned to approach and detain the Suspect with Defendant Gilis, who was armed with a rifle, as backup. (*Id*.).  Defendants Russo and Vega were to maintain their position at the front of the store to prevent customers from entering and to intercept the Suspect if he tried to flee. (*Id*.).

Defendants Nerbonne and Good approached with their guns drawn, pointed at the Suspect, and ordered him to show his hands. (*Id*. ¶ 20).  The Suspect initially complied; however, began sidestepping and eventually ran toward the store entrance. (*Id*. ¶ 21). Defendants Good and Nerbonne chased the suspect as he ran through the clothing department, grabbing and throwing merchandise onto the floor.  (*Id*. ¶ 21).  The Suspect, in the process of fleeing from the officers, ran into a store mannequin and lost his footing. (*Id*. ¶ 22).

While Defendants Good and Nerbonne chased after the Suspect, Plaintiff ran towards the scene from the front of the store, where he was observing the situation. (*Id*.).  Plaintiff then jumped on top of the Suspect to prevent him from getting up and continuing to escape. (*Id*. ¶ 23).  After Plaintiff jumped on the Suspect, Defendants Nerbonne and Good also jumped on top of Plaintiff and began punching at both him and the Suspect. (*Id*. ¶ 23).  At this time, Plaintiff was sandwiched between the Suspect and Defendants Nerbonne and Good, who were trying to control the Suspect. (*Id*.).  Plaintiff alleges that, while he was stuck between the officers and the Suspect, Defendants Nerbonne and Good delivered several closed-fist strikes to Plaintiff's head. (*Id*. ¶ 23).  Defendants Russo and Vega also approached the scene and purportedly delivered several closed-fist strikes to Plaintiff's head. (*Id*. ¶ 25–26).  Additionally, Defendant

Gillis also approached the scene with a rifle. (*Id*. ¶ 27). Plaintiff alleges that Defendant Gillis hit him in the head with the rifle butt, punched him, and attempted to Tase him. (*Id*. ¶¶ 26–27). After being Tased, Plaintiff finally was able to roll on his side and communicate that he was a store employee and retired law enforcement officer. (*Id*. ¶ 28). Plaintiff suffered significant injury, including, but not limited to, bloody nose, bruising of his face and body, fractured orbital floor of the left eye/cheek, concussion, blurry vision, difficulty focusing on distant objects, unusual sensation in the teeth and palate, possible nerve damage, headaches, and cognitive difficulty attributed to concussion symptoms. (*Id*. ¶ 29).

On January 8, 2019, Plaintiff filed the instant action under 42 U.S.C. § 1983. (*See* Compl., ECF No. 1). Defendants then filed the instant Motions for Summary Judgment, (ECF Nos. 54–55). On December 16, 2020, Magistrate Judge Nancy J. Koppe denied Plaintiff's Third Motion to Compel, (ECF No. 53), as untimely. (*See* Order Denying Motion to Compel, ECF No. 72). Plaintiff thereafter filed an Objection/Appeal of her Order. (*See* Objection/Appeal of Order Denying Mot. Compel, ECF No. 73). The Court addresses the pending motions in turn.

## II.    LEGAL STANDARD

### A. Motion for Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id*. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or

1    judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*,

2    718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253,

3    288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all

4    inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

5    favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United*

6    *States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary

7    judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*,

8    477 U.S. 317, 323–24 (1986).

9          In determining summary judgment, a court applies a burden-shifting analysis.  "When

10    the party moving for summary judgment would bear the burden of proof at trial, it must come

11    forward with evidence which would entitle it to a directed verdict if the evidence went

12    uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

13    the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

14    *Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In

15    contrast, when the nonmoving party bears the burden of proving the claim or defense, the

16    moving party can meet its burden in two ways: (1) by presenting evidence to negate an

17    essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

18    party failed to make a showing sufficient to establish an element essential to that party's case

19    on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–

20    24.  If the moving party fails to meet its initial burden, summary judgment must be denied and

21    the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

22    398 U.S. 144, 159–60 (1970).

23          If the moving party satisfies its initial burden, the burden then shifts to the opposing

24    party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

25    *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id*. at 249–50.

## B.  Objection/Appeal of Magistrate Judge's Order

When reviewing the order of a magistrate judge, the order should only be set aside if the order is clearly erroneous or contrary to law. LR IB 3-1(a); 28 U.S.C. § 636(b)(1)(A); *Laxalt v. McClatchy*, 602 F. Supp. 214, 216 (D. Nev. 1985).  A magistrate judge's order is "clearly erroneous" if the court has "a definite and firm conviction that a mistake has been committed."

1  *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948);

2  *Burdick v. Comm'r IRS*, 979 F.2d 1369, 1370 (9th Cir. 1992).  "An order is contrary to law

3  when it fails to apply or misapplies relevant statutes, case law or rules of procedure."

4  *UnitedHealth Grp., Inc. v. United Healthcare, Inc.*, No. 2:14-cv-00224-RCJ, 2014 U.S. Dist.

5  LEXIS 129489, 2014 WL 4635882, at *1 (D. Nev. Sept. 16, 2014).  When reviewing the order,

6  however, the magistrate judge "is afforded broad discretion, which will be overruled only if

7  abused." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007).  The

8  district judge "may not simply substitute [his or her] judgment" for that of the magistrate judge.

9  *Grimes v. City and Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (citing *United*

10  *States v. BNS, Inc.*, 858 F.2d 456, 464 (9th Cir. 1988)).

11  **III.   DISCUSSION**

12      **A.  Motions for Summary Judgment, (ECF Nos. 54–55)**

13         Plaintiff alleges seven causes of action in his Complaint, specifically: (1) violation of

14  constitutional rights under Section 1983; (2) violation of constitutional rights based on a *Monell*

15  claim; (3) battery; (4) negligence; (5) negligent hiring and supervision under Section 1983; (6)

16  negligent hiring and retention; and (7) intentional infliction of emotional distress. (*See* FAC ¶¶

17  31–85).  Defendants seeks summary judgment on each of Plaintiff's claims. (Def. City of

18  Henderson's Mot. Summ. J. ("City of Henderson's MSJ"), ECF No. 54); (Def. Officers' Mot.

19  Summ. J. ("Defendant Officers' MSJ"), ECF No. 55).  Defendant City of Henderson argues

20  that there is no *Monell* claim because Plaintiff cannot demonstrate a city policy or custom that

21  caused Plaintiff's injuries. (City of Henderson's MSJ 6:1–9:27).  Defendant Officers claim that

22  they did not violate Plaintiff's constitutional rights and as such, Plaintiff's Section 1983 claims

23  fail as a matter of law. (Def. Officers' MSJ 14:10–21:19).  Additionally, Defendant Officers

24  assert that qualified immunity applies to the Section 1983 claims and discretionary immunity

25

applies to the state law claims. (*Id*. 21:21–27:15).  The Court addresses each cause of action in turn.

### i. Section 1983 Claims

Plaintiff asserts three § 1983 claims against Defendants: (1) deprivation of his Fourth Amendment right; (2) deprivation of his Fourteenth Amendment right; and (3) a *Monell* claim solely against City of Henderson. (FAC ¶¶ 31–41).

Section 1983 actions allege a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  To bring a successful § 1983 claim, a plaintiff must allege (1) a violation of a constitutional right and (2) must show that the alleged violation was committed by "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).  Moreover, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393—94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)).  The Court will first discuss the Fourth and Fourteenth Amendment claims before turning to the *Monell* claim.

### 1. Fourth Amendment Claim

Plaintiff alleges that Defendants "unreasonably use[d] . . . excessive and potentially lethal force" in violation of the Fourth Amendment. (FAC ¶ 33).  Defendants argue that no Fourth Amendment claim applies because Plaintiff was not seized. (Def. Officers' MSJ 14:10–17:20).  Without a seizure, Defendants contend that Plaintiff cannot also argue excessive use of force. (*Id*.).

To determine whether a person is seized under the Fourth Amendment, courts consider whether, "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore

the police presence and go about his business." *Florida v. Bostick,* 501 U.S. 429, 437 (1991) (quotation marks omitted).  However, "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control.  A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Brower v. Cty. of Inyo*, 489 U.S. 593, 596, 109 S. Ct. 1378, 1381 (1989) (citations omitted).  "[N]o Fourth Amendment seizure would take place where a 'pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit,' but accidentally stopped the suspect by crashing into him." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 844, 118 S. Ct. 1708, 1715, 140 L. Ed. 2d 1043 (1998) (citing *id*.).

In *United States v. Al Nasser*, the Ninth Circuit determined that no seizure occurred because the officer did not intend to physically stop or detain the defendant. *Al Nasser*, 555 F.3d 722, 725 (9th Cir. 2009).  There, a Border Patrol agent shined a flashlight towards and into the defendant's car as he drove by the scene. *Id*.  Although the defendant ultimately stopped, "the lights and the vehicles that caused him to do so were not a roadblock put in place to accomplish that purpose." *Id*. at 731.  The Ninth Circuit accordingly held that no seizure occurred for purposes of the Fourth Amendment. *Id*.

Likewise, Defendants did not intend to stop Plaintiff when they purportedly grabbed and hit him.  Multiple officers testified that they did not know that the subject individual was Plaintiff.  For example, Officer Nelson stated that "[a]fterwards it was determined that the subject was a Store employee, James Herndon who is the Plaintiff . . . in this case." (Nelson Decl. ¶ 18).  Sergeant Gillis similarly declared that "Plaintiff was not the intended object of my use of force.  The Suspect was the intended object." (Gillis Decl. ¶ 28).  Indeed, Plaintiff admitted he jumped on top of the suspect on his own accord. (Pl.'s Depo. 44:6–9) ("I made the decision based on what I knew at that moment to jump on [the Suspect] so he couldn't get

up.").  Like the officers in *Al Nassar*, Defendants' alleged force that caused Plaintiff to stop "were [not roadblocks] put in place to accomplish that purpose." *Al Nasser*, 555 F.3d at 731. Because Plaintiff was not seized, no Fourth Amendment violation occurred.  Notably, Plaintiff does not respond to Defendants' argument but rather misinterprets Defendant Officers' argument, asserting that "if there is no seizure under the Fourth Amendment, then there can be no due process analysis." (Resp. to Def. Officers' MSJ 24:21–22).  Because Plaintiff cannot demonstrate that a seizure occurred for purposes of the Fourth Amendment, the Court accordingly grants summary judgment to Defendants as to Plaintiff's Fourth Amendment unlawful seizure claim.[2]

### 2.  *Substantive Due Process*

Plaintiff additionally alleges a Fourteenth Amendment violation, arguing that Defendants' actions violated his substantive due process rights. (FAC ¶¶ 32–33).  Defendants argue that Plaintiff cannot alternatively recover under the Fourteenth Amendment because Defendants' actions do not "shock the conscious." (Def. Officers' MSJ 17:22–19:2).

A person injured as a result of police misconduct may prosecute a substantive due process claim under Section 1983. *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1408 n. 10 (9th Cir.1989), cert. denied, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990).  "To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).  Specifically, to assert a substantive due process claim for police misconduct, the plaintiff must demonstrate that the government's conduct was "so egregious, so outrageous, that it may be fairly said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998).

---

[2] The Court does not further discuss whether Defendants' use of force was reasonable because no seizure occurred. *Bonivert v. City of Clarkston*, 883 F.3d 865, 879 (9th Cir. 2018) (citing *Graham*, 490 U.S. at 388) ("Excessive use of force *in effectuating a seizure* violates the Fourth Amendment.") (emphasis added).

There is no genuine dispute of material fact as to whether Defendants engaged in "conscience shocking behavior." *Brittain v. Hansen*, 451 F. 3d 982, 991 (9th Cir. 2006) (citing County of Sacramento, 523 U.S. at 846) ("[O]nly the most egregious official conduct can be said to be arbitrary in a constitutional sense," a plaintiff must also show "conscience shocking behavior by the government," i.e., "conduct intended to injure in some way unjustifiable by any governmental interest."). Plaintiff mentions the Fourteenth Amendment only once in his Complaint and does not provide facts to support his alleged Fourteenth Amendment due process claim. (FAC ¶ 32). Citing to *Claybrook v. Birchwell*, 199 F.3d 350, 361 (6th Cir. 2000), Plaintiff conclusory argues that the Court must allow Plaintiff to maintain his Fourteenth Amendment due process claim until there is a factual determination by the jury. (Resp. to Def. Officers' MSJ 24:19–25:10). The Sixth Circuit's decision in *Claybrook*, however, affirmed the district court's decision to grant summary dismissal of the Fourteenth Amendment claim. *Claybrook*, 199 F.3d at 361 ("no rational fact finder could conclude that [the officers] violated [the plaintiff's] substantive due process rights, because the plaintiff cannot prove that they acted with malice."). Contrary to Plaintiff's assertion, the Sixth Circuit in *Claybrook* does not stand for the general proposition that a Fourteenth Amendment due process claim must survive simply because the claim is a factual determination by the jury. Here, Plaintiff fails to provide any evidence to demonstrate a genuine dispute of material fact exists. *See Celotex Corp.*, 477 U.S. at 323–24 (determining that a principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims"). Accordingly, Defendants are entitled to summary judgment as to Plaintiff's Fourteenth Amendment claim.

### 3. Negligent Training and Supervision

Plaintiff alleges that Defendant City of Henderson inadequately established and implemented proper procedures for apprehending and detaining suspects. (FAC ¶ 64). "In order to establish a claim under § 1983 due to inadequate training, the [plaintiff] must provide

evidence from which a reasonable jury could find that there was an inadequate training program, and that the [defendant] was deliberately indifferent to whether its officers received adequate training." *Herrera*, 298 F.Supp.2d at 1052.  There must be actual causation between the inadequate training and the deprivation of the plaintiff's rights. *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir.1989).

Here, Plaintiff fails to show sufficient facts exists as to whether City of Henderson's inadequate training caused Plaintiff's injuries.  Plaintiff provides facts to support a finding that City of Henderson inadequately trained Defendant Officers. (*See* Resp. to City of Henderson's MSJ 22:6–13).  For example, Defendant Nelson conceded he never had training with an armed robber. (*Id.* 22:6–7).  Additionally, Defendant Vega admitted to never receiving training on striking with the buff of a rifle. (*Id.* 22:8–9).   Such evidence, however, does not present factual dispute as to whether City of Henderson's purportedly negligent training caused Plaintiff's injuries.  Aside from Plaintiff's broad claim that "[c]ertainly, a reasonable jury could infer that Henderson's failure to train the Defendant Officers gave rise to Plaintiff's injuries in this case," Plaintiff provides no other evidence to causally link Defendants' negligent training to Plaintiff's injuries from the incident.  Accordingly, the Court also grants summary judgment as to Plaintiff's Fifth Cause of Action as to Defendant City of Henderson.

### ii.   *Monell* Claim

Plaintiff's second cause of action seeks to impose municipal liability on City of Henderson under § 1983. (FAC ¶¶ 36–41).  The Supreme Court has held that a municipality can be liable under § 1983 if an official policy or custom directly caused the violation of an individual's constitutional rights. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983."

1   *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412, (1989)

2   (citations and internal quotations omitted).

3          Pursuant to *Monell*, municipalities can be sued directly under § 1983 for violations of

4   constitutional rights. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98

5   S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  As explained by the Ninth Circuit, a litigant may recover

6   from a municipality under § 1983 on one of three theories of municipal liability. *Clouthier v.*

7   *Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010).  "First, a local government may be

8   held liable 'when implementation of its official policies or established customs inflicts the

9   constitutional injury.'" *Id.* (quoting *Monell*, 436 U.S. at 708 (Powell, J. concurring)).  "Second,

10  under certain circumstances, a local government may be held liable under § 1983 for acts of

11  omission, when such omissions amount to the local government's own official policy." *Id.*

12  "Third, a local government may be held liable under § 1983 when 'the individual who

13  committed the constitutional tort was an official with final policy-making authority' or such an

14  official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at

15  1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992)).  These three

16  theories are sometimes referred to as (1) commission, (2) omission, and (3) ratification,

17  respectively. *See, e.g.*, *Aranda v. City of McMinnville*, 942 F.Supp.2d 1096, 1109 (D. Or.

18  2013).

19         Here, as discussed *infra*, Defendants did not violate Plaintiff's constitutional rights under

20  the Fourth or Fourteenth Amendments.  Without a constitutional violation, Plaintiff cannot

21  demonstrate *Monell* liability. *Lockett v. Cty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020)

22  ("*Monell* claims thus require a plaintiff to show an underlying constitutional violation.").  Even

23  assuming that Plaintiff could demonstrate a constitutional violation, Plaintiff's *Monell* claim

24

25

fails because Plaintiff otherwise cannot demonstrate causation as to his *Monell* claim.[3]  Here,

Plaintiff conclusively states that City of Henderson's customs, practices, and policies

proximately caused him injuries. (FAC ¶ 39).  Neither the First Amended Complaint nor

Plaintiff's Response to Defendant City of Henderson's Motion for Summary Judgment,

however, provides additional factual support to demonstrate that City of Henderson's policy

was the "moving force" behind the alleged constitutional violations. *City of Canton, Ohio*, 489

U.S. at 389–91.  Plaintiff thus fails to demonstrate that City of Henderson's unlawful conduct

in violation of Plaintiff's Fourth and Fourteenth Amendment rights caused his injuries. *See Van

Ort v. Est. of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) ("[w]ithout proximate cause, there is

no section 1983 liability.").  Because City of Henderson cannot be held liable under a *Monell*

claim, the Court accordingly grants summary judgment on Plaintiff's Second Claim as to

Defendant City of Henderson.

### iii.  State Law Claims

Given that only Plaintiff's state claims remain,[4] the Court considers *sua sponte* whether

it has subject matter jurisdiction over the surviving claims. *See Augustine v. United States*, 704

F.2d 1074, 1077 (9th Cir. 1983) ("The defense of lack of subject matter jurisdiction cannot be

waived, and the court is under a continuing duty to dismiss an action whenever it appears that

the court lacks jurisdiction."); *see also Moore v. Maricopa Cnty. Sheriff's Office*, 657 F.3d 890,

---

[3] Plaintiff cannot allege a ratification theory at this stage of the litigation. (Resp. to Def. City of Henderson's MSJ 19:14–20:11).  Plaintiff did not allege a ratification theory in his First Amended Complaint. (FAC ¶ 39) ("Plaintiff has been damaged as a proximate result of City of Henderson and their HPD's *customs, practices and policies*, including, but not limited to, a bloody nose, bruising of his face and body, fractured orbital floor of the left eye/cheek, concussion, blurry vision, difficulty focusing on distant objects, unusual sensation in the teeth and palate, possible nerve damage, headaches, and cognitive difficulty attributed to concussion symptoms.") (emphasis added).  The deadline to amend has now passed.  Plaintiff cannot now allege a *Monell* claim on the basis of ratification.

[4] As explained above, the Court grants summary judgment as to Plaintiff's federal claims, namely the Section 1983 claims based on the Fourth Amendment and Fourteenth Amendment, the *Monell* claim, and the Section 1983 claim based on negligent training and supervision claim.  The state claims of negligence, battery, negligent hiring and retention, and intentional infliction of emotional distress remain pending. (*See* FAC ¶¶ 42–54, 73–83).

894 (9th Cir. 2011) (noting the court's obligation to determine *sua sponte* whether it has subject matter jurisdiction).  Plaintiff initiated the instant suit based on federal question jurisdiction. (*See* FAC ¶ 1) ("Jurisdiction is based upon 29 U.S.C. §§ 1331, 1343, and 1367).  A district court has jurisdiction to adjudicate a pendent state law claim if there is a federal claim so related to it that they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a). However, "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27, 86 S. Ct. 1130, 1139 (1966).

The state issues of negligence, battery, negligent hiring and retention, and intentional infliction of emotional distress substantially predominate the issues raised. (FAC ¶¶ 42–54, 73–83).  Because no federal claims remain, the Court no longer maintains subject matter jurisdiction in this case. *Wren v. Sletten Constr. Co.*, 654 F.2d 529, 536 (9th Cir. 1981) ("When the state issues apparently predominate and all federal claims are dismissed before trial, the proper exercise of discretion requires dismissal of the state claim.").  The Court accordingly finds that it lacks subject matter jurisdiction over the remaining state law claims.  Defendants' Motions for Summary Judgment are thus granted, and the remaining motions are dismissed as moot for lack of subject matter jurisdiction.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendant City of Henderson's Motion for Summary Judgment, (ECF No. 54), is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Officers' Motion for Summary Judgment, (ECF No. 55), is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Objection to Magistrate Order, (ECF No. 73), is **DENIED as moot**.

1        **IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Supplement

2  regarding the Objection/Appeal, (ECF No. 90), is **DENIED as moot**.

3        **IT IS FURTHER ORDERED** that Plaintiff's Motions for Leave to File Supplement,

4  (ECF Nos. 80, 81, 90), are **DENIED**.

5        The Clerk of Court is ordered to close the case accordingly.

6        **DATED** this __20__ day of September, 2021.

 

 

                                                    _____

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT