**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JAMES M. HERNDON, | ) |
| | ) |
| Plaintiff, | )   Case No.: 2:19-cv-00018-GMN-VCF |
| vs. | ) |
| | )   **ORDER** |
| CITY OF HENDERSON, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Pending before the Court is Defendants' Motion for Summary Judgment, (ECF No. 119), filed by Defendants City of Henderson and Seargent M. Gillis (collectively, "Defendants"). Plaintiff James M. Herndon ("Plaintiff") filed a Response, (ECF No. 126), to which Defendants filed a Reply, (ECF No. 133).

Also pending before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 120). Defendants filed a Response, (ECF No. 123), to which Plaintiff filed a Reply, (ECF No. 131).

Also pending before the Court is Plaintiff's Counter Motion to Strike, (ECF No. 128). Defendants filed a Response, (ECF No. 128), to which Plaintiff filed a Reply, (ECF No. 136).

Also pending before the Court is Plaintiff's Motion for Leave to File Excess Pages, (ECF No. 132).

///
///
///
///
///
///

For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Summary Judgment, **DENIES as moot** Plaintiff's Motion for Summary Judgment, **DENIES** Plaintiff's Counter Motion to Strike,[1] and **GRANTS** Plaintiff's Motion for Leave to File Excess Pages.[2]

## I. BACKGROUND

This case arises from a police-involved incident at a Sportsman's Warehouse during which Defendant Sergeant M. Gillis ("Sgt. Gillis") allegedly struck Plaintiff in the head with a rifle and attempted to tase him. (*See generally* First Am. Compl. ("FAC"), ECF No. 13). On the day of the incident, a Sportsman's Warehouse employee watched Mr. Justin Franks, the Suspect, engaging in conduct indicative of attempted theft. (Hagood Dep. at 18–20, Ex. G to Defs.' Mot. Summ. J., ECF No. 119-8). The employee recognized the Suspect as someone who had attempted to steal from the store the day before. (*Id.*). When the employee saw a firearm fall out of the Suspect's pocket, the employee called 911 to report an attempted armed robbery in progress. (*Id.* at 36–37).

When officers responded to the Sportsman's Warehouse, another employee let them in through the backdoor. (*Id.* at 38–39). An employee continued to monitor the Suspect's

---

[1] A party cannot "create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). Before striking a declaration, a court must "make a factual determination that the contradiction is a sham" and that the inconsistency is "clear and unambiguous." *Id.* Here, Plaintiff moves to strike Sgt. Gillis's declaration because it is allegedly inconsistent with his prior deposition testimony. Plaintiff misconstrues Sgt. Gillis's testimony that he enlisted the help of Sportsman's Warehouse employees to clear the front of the store as evidence that Sgt. Gillis requested Plaintiff's assistance in apprehending the Suspect. (*See* Reply Mot. Strike 4:14–5:8, ECF No. 136). A request to clear the front of the store of customers and employees is not the same as a request to physically engage with the Suspect. Plaintiff also takes issue with a change in Sgt. Gillis's testimony regarding whether the Suspect's firearms were loaded and cocked into the firing position. (*Id.* 5:10–6:10). Defendants argue that the difference in testimony demonstrates the difference between what Sgt. Gillis knew at the time of the incident and what he learned after the fact. (*See* Resp. Mot. Strike 5:1–16, ECF No. 134). Either way, Sgt. Gillis's testimony and affidavit confirm the presence of a firearm, which is the undisputed fact the Court relies on in this Order. Accordingly, the Court declines to strike Sgt. Gillis's Declaration.

[2] Defendants did not respond to Plaintiff's Motion for Leave to File Excess Pages, (ECF No. 132). "The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion." D. Nev. LR 7-2(d). Accordingly, the Court GRANTS Plaintiff's Motion for Leave to File Excess Pages as unopposed.

whereabouts on the CCTV cameras and relayed that information to the police. (*Id.* at 40). As shown in the CCTV footage, the Suspect was walking through the clothing department when two officers approached him with guns drawn. (CCTV video 1-Clothing 1 at 4:15:00 PM, Ex. J to Defs.' Mot. Summ. J.). The Suspect dropped the basket he was holding and put his hands up before fleeing from the officers. (*Id.* at 4:15:00–05).

While fleeing from the officers, the Suspect tripped and fell near Plaintiff. (Herndon Dep. 43:22–44:2. Ex. H to Defs.' Mot. Summ. J., ECF No. 119-9). Plaintiff, who had previously worked in law enforcement, jumped on the Suspect to prevent him from getting up. (*Id.* 20:15–21; 44:6–9). Immediately following Plaintiff's contact with the Suspect, several officers also jumped on the Suspect and Plaintiff. (CCTV video 1-Accessories at 4:15:06–09, Ex. J. to Defs.' Mot. Summ. J.). At some point during the scuffle, Plaintiff reached up and peeled an officer's fingers off his throat. (*Id.* 48:3–10). Plaintiff tried to redirect the officer's attention to the Suspect by yelling, "the bad guy is on the bottom." (*Id.* 48:8–19). In Plaintiff's own words, "[he] was fighting." (*Id.* 48:22).

Sgt. Gillis was "in charge" on the day of the incident, meaning he was controlling the actions of his officers. (Gillis Dep. 6:25–7:8, Ex. L to Defs.'s Mot. Summ. J., ECF No. 119-13). He was also the last officer to arrive at the scuffle. Sgt. Gillis heard screams of "drop the gun," "he's got a gun," and "he's got two guns." (*Id.* 107:4–5). Sgt. Gillis testified that some of these screams came from his officers, but others came from a voice he did not recognize. (*Id.* 107:7–13). Sgt. Gillis was not immediately sure how many officers were involved in the scuffle but noted that they were not in control of the Suspect. (*Id.* 109:19–25). Sgt. Gillis could see only one plain-clothes person and did not initially know Plaintiff was involved. (*Id.* 109:12–13).

The CCTV footage shows Sgt. Gillis arriving at the pile of bodies. (CCTV video 1-Accessories at 4:15:12, Ex. J to Defs.' Mot. Summ. J.). From this footage, it is not readily apparent that two plain-clothed people are involved. (*Id.*). Upon arrival, Sgt. Gillis had a clear

view of Plaintiff's head and upper back and used the butt of his rifle to strike Plaintiff. (*Id.* at 4:15:13–18); (*see also* Gillis Dep. 171:15–23).  At the time, Sgt. Gillis believed he was striking the Suspect. (Gillis Dep. 171:18–23).  He intended to strike the person he hit in the upper torso area, below the head and neck. (*Id.* 172: 1–3).  According to Sgt. Gillis, as he began to strike, Plaintiff raised his head and the butt of the rifle skipped off the back of Plaintiff's head. (*Id.* 172:4–16).  Sgt. Gillis then attempted to tase Plaintiff before it became evident that Plaintiff was not the Suspect. (*Id.* 114:12–116:22).

Plaintiff sued Sgt. Gillis, the City of Henderson, and the other officers involved to recover damages resulting from his injuries sustained during this incident. (*See generally* FAC). On an earlier pair of cross motions for summary judgment, this Court found that Plaintiff had not been seized and granted summary judgment for Defendants. (Order, ECF No. 93).  On appeal, the Ninth Circuit concluded that Plaintiff had been seized and reversed and remanded for this Court to reconsider the remaining issues on summary judgment. (Mem. Dec., ECF No. 111).[3]  Following instructions from the Court, the parties refiled cross motions for summary judgment.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a

---

[3] Because Plaintiff did not appeal the grant of summary judgment as to the other officers, the Court will consider Plaintiff's claims against Sgt. Gillis and the City only. (*See* Mem. Dec. at 2).

genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations and quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.     DISCUSSION**

The Ninth Circuit concluded that Sgt. Gillis seized Plaintiff. (Mem. Dec. at 7). Accordingly, this Court must now determine whether Sgt. Gillis's use of force was "objectively reasonable under the circumstances." *Zion v. County of Orange*, 874 F.3d 1072, 1075 (9th Cir. 2017); *see also Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)) ("[E]xcessive force in the course of making a 'seizure' of the person is

properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." (cleaned up)). Further, the Court must reconsider the remaining claims on summary judgment. (Mem. Dec. at 8). The Court begins with Defendants' Motion for Summary Judgment.

### A. Reasonableness of Force

Defendants argue that Plaintiff's excessive force claims fail as a matter of law because Sgt. Gillis made an objectively reasonable mistake of fact. (Defs.' Mot. Summ. J. 13:8–13). Preliminarily, the Court agrees that Sgt. Gillis made an objectively reasonable mistake of fact when he mistook Plaintiff for the Suspect. There is no genuine dispute of material fact that (1) Plaintiff was in plain clothes with no store identifying markings;[4] (2) Plaintiff unilaterally joined the fight;[5] (3) Plaintiff was resisting the officers' efforts to control him;[6] and (4) Sgt. Gillis arrived at the scene of a tangle of bodies fighting and it was not evident that the fight involved two plain-clothed individuals.[7]

Plaintiff nonetheless argues that Sgt. Gillis should have been able to identify Plaintiff—as a store employee, or at least as not the Suspect—because Sgt. Gillis received a description of both Plaintiff and the Suspect. (Resp. to Defs.' Mot. Summ. J. 13:13–14:20) (distinguishing *White v. Pauly*, 580 U.S. 73 (2017)). Plaintiff further argues that Sgt. Gillis's mistake of fact was unreasonable because Plaintiff "repeatedly announced himself to Sgt. Gillis and the other officers." (*Id.* 15:12). Upon review of the video footage, however, the Court finds that Sgt. Gillis's mistake of fact was reasonable as a matter of law. The video footage, which the Court has viewed from every angle presented by the parties, shows Sgt. Gillis arriving at a pile of

---

[4] Plaintiff was wearing a store shirt, but he had a plain grey sweatshirt covering it. (Herndon Dep. 31:13–15).
[5] Plaintiff testified that he made the decision to tackle the Suspect because he didn't want the Suspect getting up and making the situation worse. (Herndon Dep. 44:5–9).
[6] Plaintiff testified that he "remember[ed] reaching up and peeling somebody's fingers off [his] throat." (Herndon Dep. 48:6–8).
[7] Sgt. Gillis's testimony that he did not know Plaintiff was involved in the scuffle is corroborated by the video footage, from which it is not apparent that two plain-clothed individuals were involved. (*See* CCTV video 1-Accessories at 4:15:12–18, Ex. J to Defs.' Mot. Summ. J.).

bodies, with Plaintiff and the Suspect on the bottom. (*See* CCTV video 1-Accessories at 4:15:12–18, Ex. J to Defs.' Mot. Summ. J.). Even with the benefit of viewing the scuffle from its inception, when Plaintiff tackled the Suspect, the Court still has difficulty identifying which limb belongs to which body. Thus, a late arrival like Sgt. Gillis would not have known that Plaintiff was not the Suspect, or even that two plain-clothed individuals were involved. From Sgt. Gillis's perspective, he saw one plain-clothed individual resisting arrest and reasonably mistook Plaintiff for the Suspect.

Sgt. Gillis's reasonable mistake of fact notwithstanding, the Court must still address the reasonableness of Sgt. Gillis's use of force. After all, Plaintiff argues that the mistake of fact does not matter because Sgt. Gillis's use of force was unreasonable even if he applied force to the Suspect rather than Plaintiff. (Resp. to Defs.' Mot. Summ. J. 7:14–15).

Excessive force claims are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham*, 490 U.S. at 395. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir. 2015) (internal quotation marks and citations omitted).

In assessing the reasonableness of force used, the Ninth Circuit examines the totality of the circumstances. *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir 2011). In *Graham*, the Supreme Court laid out three primary factors to evaluate the government's interest in the use of force, known as the *Graham* factors: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003) (citing *Graham*, 490 U.S. at 396). Additional factors include whether the officer gave the suspect warning or could have used less intrusive

means of force. *Lowry v. City of San Diego*, 858 F.3d 1248, 1259 (9th Cir. 2017).  Courts assess the reasonableness of an officer's conduct "from the perspective of a reasonable officer on the scene," recognizing that officers may be "forced to make split-second judgments" under stressful and dangerous conditions. *Graham*, 490 U.S. at 396–97.

The Court discusses these factors and the totality of the circumstances below and concludes that a genuine dispute of material fact remains as to whether Sgt. Gillis's use of force was reasonable.

### 1. Severity of the Crime

Plaintiff downplays the severity of the crime by characterizing the Suspect's alleged crime as a misdemeanor. (Resp. to Defs.' Mot. Summ. J. 7:16–17).  Even viewing the facts in the light most favorable to Plaintiff, it is undisputed that Sgt. Gillis was responding to an unrestrained and resisting armed burglary suspect in a public store with civilians present.  From Sgt. Gillis's perspective, he was approaching a rapidly evolving situation in which his fellow officers were ordering a violent Suspect to "drop the gun." (Gillis Dep. 107:4–5).  Considering the severity of the situation, some amount of force was reasonable.

### 2. Immediate Threat to Safety

Plaintiff similarly misconstrues the facts to paint the Suspect as a "nonthreatening shoplifter." (Resp. to Defs.' Mot. Summ. J. 9:17).  The undisputed facts once again demonstrate that the armed, fleeing Suspect presented an immediate threat to safety.  Indeed, Plaintiff himself testified that the situation involved "a guy with a gun" who was "not listening to the police" in the presence of civilians. (Herndon Dep. 44:13–18).  Sgt. Gillis, reasonably mistaking Plaintiff for the dangerous Suspect, was responding to this ongoing and escalating threat to officer and civilian safety.[8]

---

[8] To the extent Plaintiff argues that Defendants created the exigency, the Court is unpersuaded.  Police create an exigency by "engaging or threatening to engage in conduct that violates the Fourth Amendment." *Kentucky v.*

### 3. Actively Resisting Arrest

The parties do not dispute that Plaintiff—even though he was not the target of police action—was resisting arrest during his involvement in the scuffle. (*See* Resp. to Defs.' Mot. Summ. J. 10:11–11:10). Plaintiff attempts to circumvent this fact by arguing that he only "*minimally* resisted arrest." (*Id.* 11:10). But Plaintiff acknowledges that he resisted arrest when he tried to "peel[] someone's fingers off [his] throat." (*Id.* 11:5–6 (quoting Herndon Dep. 48:3–19, Ex. 3 to Resp., ECF No. 128-3)).

Moreover, the case Plaintiff relies on to characterize his actions as "minimally resisting" instead of "actively resisting" are distinguishable from the facts here. In *Smith v. City of Hemet*, the plaintiff ignored officers' requests to put his hands on his head, reentered his home for a period of time, and refused to place both his arms behind his back. 394 F.3d 689, 703 (9th Cir. 2005). Notably, the plaintiff did not attack the officers or their dog or attempt to run from the officers. *Id.* The Ninth Circuit conjected that "it [did] not appear that [the plaintiff's] resistance was particularly bellicose or that he showed any signs of fleeing the area." *Id.* Here, Plaintiff was involved in a physical altercation and admitted to physically resisting officers' attempts to subdue him. The Court therefore finds that Plaintiff was actively resisting arrest, which weighs in favor of a finding of reasonableness.[9]

### 4. Additional Factors

Even though the Court finds that the severity of the crime, the immediate threat to safety, and Plaintiff's active resistance weigh in favor of a finding of reasonableness, the Court must still consider the totality of the circumstances. *See Glenn*, 673 F.3d at 872. In the totality

---

*King*, 563 U.S. 452, 462 (2011). Defendants here were responding to an already dangerous situation with an armed suspect. And Sgt. Gillis used force during an ongoing struggle with the Suspect.

[9] Additionally, the Suspect was indisputably actively resisting arrest when he fled from the officers. Because Sgt. Gillis's mistake of fact in confusing Plaintiff with the Suspect was reasonable, this factor further weighs in favor of finding the use of force was reasonable.

of the circumstances, "the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." *Smith*, 394 F.3d at 701.

Plaintiff suggests that Sgt. Gillis's strike to Plaintiff's head with the butt of a rifle was deadly force. (Resp. to Defs.' Mot. Summ. J. 6:15–16 (citing *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir. 2011)). The Court does not agree with Plaintiff that "blows to the head are *indisputably* deadly force." (Resp. to Defs.' Mot. Summ. J. 6:15–16) (emphasis added). Indeed, *Young* explicitly states that baton blows are "considered a form of 'intermediate force.'" *Young*, 655 F.3d at 1162. Plaintiff appears to rely on the *Young* court's treatment of the Los Angeles County Sheriff's Department policies instructing officers that "[h]ead strikes with an impact weapon are prohibited unless circumstances justify the use of deadly force." *Id.* The Henderson Police Department Use of Force Policy does not contain the same instruction. (*See generally* HPD Use of Force Policy, Ex. K to Defs.' Mot. Summ. J., ECF No. 119-12). Nonetheless, Plaintiff's deadly force argument raises a dispute of fact regarding whether the severity of Sgt. Gillis's use of force was reasonable, especially considering that five other officers were already involved and on top of Plaintiff. The Court therefore cannot find that Sgt. Gillis's use of force was reasonable as a matter of law.

### B. QUALIFIED IMMUNITY

Having found a dispute of fact concerning the reasonableness of Sgt. Gillis's force, the Court must now address Defendants' qualified immunity claim. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"). Thus, to overcome a claim of immunity, plaintiffs must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735.

As noted above, whether Sgt. Gillis violated Plaintiff's constitutional right under the Fourth Amendment involves a dispute of material fact. Defendants are nonetheless entitled to qualified immunity because Plaintiff has not demonstrated that the right was clearly established. Although qualified immunity is a defense raised by the defendant, "[i]t is the plaintiff who 'bears the burden of showing that the rights allegedly violated were clearly established.'" *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000)).

A right is "clearly established" when "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (cleaned up). The Supreme Court has "'repeatedly told courts . . . not to define clearly established law at a high level of generality,' since doing so avoids the crucial question [of] whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (quoting *al-Kidd*, 563 U.S. at 742) (internal citation omitted). Although defeating a qualified immunity claim on summary judgment does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate" for a right to be clearly established. *White*, 580 U.S. at 79 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

Defendants note that no law clearly established that "it was unconstitutional for an officer, who arrives late to a violent and chaotic ground struggle involving an armed felony suspect, use intermediate force against an individual reasonably perceived to be the Suspect

because the individual unilaterally interjected himself into the fight." (Defs.' Mot. Summ. J. 19:10–14). Indeed, "[c]learly established federal law does not prohibit a reasonable officer who arrives late to an ongoing police action in circumstances like this from assuming that proper procedures . . . have already been followed" and "[n]o settled Fourth Amendment principle requires that officer to second-guess the earlier steps already taken by his or her fellow officers." *White*, 580 U.S. at 80.

The burden thus shifts to Plaintiff to "identify a case where an officer acting under similar circumstances as [Sgt. Gillis] was held to have violated the Fourth Amendment." *See id.* at 79. Plaintiff argues that in the Ninth Circuit, "using blunt force against a person suspected of a misdemeanor that did not pose [a] serious threat to safety and was not actively resisting arrest violates the Fourth Amendment and is not subject to qualified immunity." (Resp. to Defs.' Mot. Summ. J. 17:22–18:4) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 478–79 (9th Cir. 2007); *Young*, 655 F.3d at 1167–68). As noted above, however, the Suspect here posed a serious threat to safety, and both Plaintiff and the Suspect were actively resisting arrest. *Cf. Blankenhorn*, 485 F.3d at 478–79 (concluding that officers violated Fourth Amendment by gang-tackling plaintiff suspected of a misdemeanor trespass who, though verbally refused to comply with officer requests, did not actively resist arrest); *Young*, 655 F.3d at 1168 (noting that it was clearly established that pepper spraying and striking plaintiff with baton violated Fourth Amendment when plaintiff had merely disobeyed a traffic officer's order to get back in his car).

The other cases Plaintiff relies on to demonstrate that Sgt. Gillis's alleged violation was clearly established are similarly unpersuasive. *See, e.g.*, *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (concluding that an officer who tased pregnant woman who posed no threat to officers and minimally resisted arrest violated Fourth Amendment); *Nelson v. City of Davis*, 685 F.3d 867, 879–87 (9th Cir. 2012) (affirming denial of qualified immunity defense for

officers who threw pepperball projectile at non-threatening plaintiff who was not engaged in the commission of a crime and not actively resisting arrest); *Deorle v. Rutherford*, 272 F.3d 1272, 1275, 1286 (9th Cir. 2001) (concluding that officer was not entitled to qualified immunity when he shot a lead-filled beanbag round into the face of an unarmed, emotionally disturbed man who had not committed any serious offense and had generally obeyed officer instructions); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) (noting that it was clearly established that using a taser in dart mode constitutes more than trivial force, and at the time of the alleged incident it was "beyond debate" that using non-trivial force in response to passive bystander behavior would be unconstitutionally excessive). In each case Plaintiff cites, the officer(s) used force on non-threatening and generally complying individuals. These cases are therefore unhelpful in examining whether Sgt. Gillis's actions in the incident here—which involved a suspect actively resisting arrest and an escalating armed robbery underway—violated a clearly established right.[10]

Although "officials can still be on notice that their conduct violates established law even in novel factual circumstances," *Mattos*, 661 F.3d at 442, the "dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 742). Plaintiff has not offered any caselaw suggesting that Sgt. Gillis's particular conduct violated clearly established law and therefore fails to meet his burden of showing that the rights allegedly violated were clearly established. *See Shafer*, 868 F.3d at 1118. Accordingly, the Court GRANTS summary judgment for Defendants on qualified immunity grounds. Having granted summary judgment on qualified immunity, the

---

[10] Plaintiff cites additional cases in his own Motion for Summary Judgment. (Pl.'s Mot. Summ. J. 24:15–25:13, ECF No. 120). But Plaintiff uses these cases to make generalized statements of law that are not applicable to the specific facts of this case. *Cf. Plumhoff*, 572 U.S. at 779. Even if the Court reached Plaintiff's Motion for Summary Judgment, this is not sufficient to meet Plaintiff's burden of showing that the rights allegedly violated were clearly established. *See Shafer*, 868 F.3d at 1118.

Court need not address the parties' arguments concerning Plaintiff's *Monell* and state law claims. The Court further DENIES Plaintiff's Motion for Summary Judgment as moot.

### IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 119), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 120), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Counter Motion to Strike, (ECF No. 128), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Excess Pages, (ECF No. 132), is **GRANTED as unopposed**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall close the case and enter judgment for Defendants.

**DATED** this __23__ day of September, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court